**In re GRAND JURY INVESTIGATION.**

**Misc. No. 6798.**

United States District Court,
W. D. Pennsylvania.

Aug. 23, 1977.

Henry G. Barr; Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Burton W. Sandler, Towson, Md., Carl Max Janavitz, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

*FACTS*

The matter presently before this Court involves an investigation being undertaken by grand juries convened within the Western District of Pennsylvania. This investigation concerns possible violations of Title 18, United States Code, Sections 371, 1462, 1465 and 2, relating to the interstate distribution of pornographic and obscene materials.

On February 16, 1977, a search was conducted of premises occupied by the Majestic News Company located at 922 West North Avenue. As a result of this search, a large volume of records maintained by the Majestic News Company were seized, as well as approximately 2,000 allegedly pornographic 8 millimeter or super 8 millimeter films.

During the course of the search, several employees of the Majestic News Company were observed on the premises.

Subsequent to this search, a number of persons employed by the Majestic News Company were subpoenaed to appear before a Federal Grand Jury on April 14, 1977. These individuals were Gregory Kocan,[1] Phyllis Johns, Richard Jenkins, John Halas, Glenn Gossard and James Johns. During their appearance before the Grand Jury, each of the above witnesses were represented by Burton Sandler, Esquire and Carl M. Janavitz, Esquire. Thereafter, Richard Thompson and James Calderone, additional employees of the Majestic News Company, and Ben Nabors, an employee of a book store located in Wheeling, West Virginia, were brought before the Grand Jury. Thompson, Calderone and Nabors were all represented by Mr. Janavitz and Thompson and Calderone were additionally represented by Mr. Sandler.[2] In total Mr. Sandler represented ten clients while Mr. Janavitz represented eleven clients.

On April 28, 1977, Phyllis Johns was scheduled to appear before the Grand Jury in order to answer questions under a grant of statutory use immunity.[3] After each individual question, Mrs. Johns left the Grand Jury room whereupon Mr. Janavitz would tape record each question.[4] During some of the periods that Mrs. Johns left the Grand Jury room to record each question, Mr. Gregory Kocan, a "target" of the investigation, was observed to be standing close by.[5] The obvious purpose of recording each question addressed to Mrs. Johns was to better enable Mr. Janavitz and Mr. Sandler to represent their respective clients.

Believing that the multiple representation by Mr. Sandler and Mr. Janavitz of the

---

1. Mr. Kocan is the manager of the Majestic News Company.

2. Mr. Janavitz and Mr. Sandler also jointly represented Jerry Barnhouse and Kelsie Lanning.

3. 18 U.S.C. §§ 6002–6003.

4. The tape recording was not clandestine and at a hearing on this matter before this Court, Mr. Janavitz explicitly admitted that he was

tape recording each and every question, Tr. p. 115.

5. It is Mr. Janavitz's testimony that Mr. Kocan could not overhear anything said and that Mr. Kocan has not had the tape recording made available to him nor has a transcript of the tape recording been made available to him, Tr. p. 116.

various witnesses that have appeared before the Grand Jury constituted a conflict of interest which was impeding the effectiveness of the Grand Jury's investigation, the Government filed a motion requesting that both Mr. Janavitz and Mr. Sandler be disqualified from representing all of their clients.[6]

A hearing on the above motion was held before this Court on June 20, and 21, 1977. At this hearing each of Mr. Sandler's and Mr. Janavitz's clients were instructed by this Court that the multiple representation involved might result in a conflict of interest on the part of counsel and might be disadvantageous to the client's right to unfettered representation. Each client responded that they still desired to be represented by Mr. Janavitz and/or Mr. Sandler.

During the course of the hearing, a formal offer of non-prosecution was made by the government to Phyllis Johns,[7] Richard Thompson, Ben Nabors, Kelsie Lanning and James Johns.[8] Subsequently, Mr. Janavitz and/or Mr. Sandler filed a motion for withdrawal of representation of Grand Jury witnesses Richard Thompson, Ben Nabors, Kelsie Lanning and James Johns. Said motion was granted by Order of this Court on June 28, 1977.[9]

## ISSUES

The issue presented for our determination is whether or not Mr. Sandler and Mr. Janavitz should be disqualified from representing Grand Jury witnesses Phyllis Johns, Gregory Kocan, Richard Jenkins, John Halas, Glen Gossard, James Calderone and Jerry Barnhouse during the Grand Jury proceedings.[10] The resolution of this inquiry requires an accommodation between the right to counsel of one's own choosing and the individual's right to meaningful legal representation.

## DISCUSSION

### "Phyllis Johns"

■ The Sixth Amendment of the United States Constitution guarantees that every individual has the right to effective assistance of counsel. A penumbra of this Sixth Amendment right is the right to retain counsel of one's own choosing. The right to choose one's own counsel, however, is not absolute. Cf. *United States v. Garafola*, 428 F.Supp. 620, 626 (D.N.J.1977). As stated in *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009, 1012 (3d Cir. 1976): "the government may obtain, in appropriate circumstances, judicial interference with private arrangements for multiple legal representation of witnesses called to testify before a grand jury . . . ."

Recognizing that the right to choose one's counsel is not absolute, the issue arises whether there is a conflict of interest in Mr. Janavitz's and Mr. Sandler's (hereinafter "respondents") representation of Phyllis Johns.

---

**6.** The original motion only names nine (9) clients, but by subsequent amendment Jerry Barnhouse and Kelsie Lanning were also included.

**7.** Phyllis Johns had previously been granted statutory use immunity.

**8.** At the hearing there was some dispute as to whether formal offers of non-prosecution had been made previously. In light of the offers made at the hearing, a resolution of the proper label to be attached to past requests for cooperation by the government is unnecessary.

**9.** The government's brief artfully draws attention to the fact that all of the Grand Jury witnesses, except Phyllis Johns after her grant of statutory immunity, exercised their Fifth Amendment privilege during Grand Jury proceedings. The apparent thrust of this citation is to coach an inference that the Fifth Amendment was being used as a tool to obstruct the Grand Jury investigation. To the extent that the Fifth Amendment always erects a barrier to information gathering, such an inference would be unwarranted. However, if the government felt that the Fifth Amendment was being frivolously asserted, there were remedies available at that point in time of which the government did not avail itself. *In Re Investigation Before April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600, 608 (1976); *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

**10.** The question of representation relative to witnesses Thompson, Nabors, Lanning and James Johns is now mooted by virtue of counsel's withdrawal of June 28, 1977.

Phyllis Johns has been cloaked with statutory use immunity. In addition, Mrs. Johns has an offer of non-prosecution by the government outstanding. Respondents are legal counsel for Mrs. Johns. Mrs. Johns' testimony given pursuant to immunity could be detrimental to others being investigated by the Grand Jury such as Gregory Kocan, Richard Jenkins, John Halas, Glen Gossard, James Calderone and Jerry Barnhouse. The above-named individuals are also represented by respondents.

■ The conflict created by this dual representation is both direct and immediate. The conflict is certainly direct in that respondents represent a person that is operating under a grant of statutory use immunity as well as people that are prospective defendants. The conflict is also immediate because Mrs. Johns has a formal offer of non-prosecution by the government. It requires but a statement of the obvious to realize that negotiations for a promise of non-prosecution cannot properly be conducted by attorneys who also represent those people who may well be hurt by testimony resulting from such a promise.[11] There can be no better example of the ancient axiom that "no man can serve two masters."

Having concluded that there is both a direct and immediate conflict of interest in respondents' representation of Phyllis Johns, the issues arise as to whether Mrs. Johns can waive such a conflict of interest, and if she can, whether or not she properly did so.

■ As a general principle, an individual may waive the right to conflict-free assistance of counsel. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). The waiver, however, must be an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 58

S.Ct. 1019, 82 L.Ed. 1461 (1938). Not only must the waiver be a relinquishment of a known right but also must be done with "awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

■ At the hearing before this Court on June 21, 1977, Phyllis Johns was asked whether she voluntarily agreed to continue respondents' representation even though a possibility of conflict existed. Mrs. Johns answered yes.[12] It is this Court's opinion that Mrs. Johns did not waive her right to effective assistance of counsel at the hearing because of an inability to satisfy the standards of *Johnson* and *Brady*.

The problem of eliciting a valid waiver from Mrs. Johns largely· stems from the fact that her immediate employer, Gregory Kocan, is a prospective defendant. Merely informing Mrs. Johns of the existence of a potential conflict and seeking a waiver from her does not adequately deal with the problem of multiple representation in this situation. Mrs. Johns' "waiver" is likely a function in large part of one's natural hesitancy to alienate their employer rather than a product of a free and unrestrained will.

Additionally, respondents themselves had made their clients aware of a potential for conflicts of interest while advising them that such a conflict did not yet exist. Mr. Sandler testified at the hearing:

"I explained to them, as Your Honor has told them here in Court today, of the possibilities of conflict between representing multiple defendants. I indicated to them that in my opinion, at this point, since there was no offer of immunity, since they were all potential defendants, that I did not feel that I could not fairly represent them, but if I reached a point where I felt that I could not give them

---

11. Our holding in this case is that whenever any type of immunity is offered by the government to Grand Jury witnesses, advice relating to such immunity should be forthcoming from an attorney who does not represent any people who could be hurt by such testimony. This Court understands that there are certain features to a promise of non-prosecution, such as enforceability, which might well cause a witness to hold out for statutory use immunity even though such use immunity provides a thinner veil of protection.

12. Transcript, p. 178.

one hundred per cent loyalty and devotion, I would step out of the picture." [13]

A waiver under these circumstances would be purely illusory. As stated in *Garafola, supra* at 624 under a similar factual setting:

"He has already told his clients that there is no conflict in their interests. Thus, when the defendants answer the Court's inquiry, they actually are relying upon the advice received from their lawyer. If he tells them there is no conflict and that he can effectively represent them, how can their responses to the court be deemed to amount to a *Johnson v. Zerbst* waiver of their sixth amendment right to effective aid of counsel?"

While one court has held that representation of both employer and employee in this type of situation is inherently improper, *In Re Abrams*, 56 N.J. 271, 266 A.2d 275 (1970), this Court will not adopt such a wide-ranging view. Today's decision is limited by the facts *sub judice*. Under these facts, Mrs. Johns was incapable of making a waiver which complies with *Johnson* and *Brady*.

■ This Court finds that a serious conflict of interest exists in Respondents' representation of Phyllis Johns and that such conflict could not have been properly waived by Mrs. Johns. Accordingly, respondents are disqualified from further representing Mrs. Johns before the Grand Jury.[14]

"Other Witnesses"

■ A separate analysis is mandated when considering the government's motion for disqualification relative to witnesses Kocan, Jenkins, Halas, Gossard, Calderone and Barnhouse. None of these witnesses have been granted statutory use immunity nor do they presently have a formal offer of non-prosecution outstanding.

In *Matter of Grand Jury Empaneled January 21, 1975, supra*, the Third Circuit Court of Appeals, speaking through Judge Aldisert, established guidelines for the determination of the point in time when a *potential* conflict of interest is transformed into an *actual* conflict of interest. That point in time was held to be whenever the government communicates to the attorney that it desires to offer immunity to any of his clients. Judge Aldisert stated:

"Attorney Koelzer has represented throughout that he would withdraw as soon as a conflict arose; at oral argument, he reaffirmed this pledge and stated specifically that he would withdraw from representing any witness whom the government approached to discuss immunity or a plea. Thus, confronted with hypotheticals and not evidence, with rhetoric and not fact, the district court erred

---

13. Transcript, pp. 347–348.

14. The government strenuously urged that respondents be disqualified because their multiple representation impeded the effectiveness of the Grand Jury's investigation. However, discomfort to the Grand Jury process, without more, is not sufficient to vitiate an individual's important right to counsel of his own choosing. The government concedes that Phyllis Johns had the right to tell anyone about what transpired in the Grand Jury room. Tr. p. 381. Additionally, even if all of the witnesses retained separate counsel, the same result would easily accrue via a conference involving each individual counsel. An attorney would be derelict in his duty of representation if he did not try to impede the Grand Jury investigation through lawful means. The fact that the Grand Jury's job is made more difficult in the face of multiple representation does not justify judicial intervention in and of itself. (See *Matter of*

*Grand Jury Empaneled January 21, 1975, supra*, where the Court held that the fact that each of nine witnesses whom an attorney was representing invoked the Fifth Amendment was an insufficient basis for disqualifying the attorney on the theory that such multiple representation impeded the effectiveness of the Grand Jury investigation.)

We are mindful of the Pennsylvania Supreme Court decision in *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975) which held multiple representation a sufficient impediment to the Grand Jury process to justify disqualification. However, in *Pirillo*, the attorneys' fees were to be paid by a common source of funds—the Fraternal Order of Police. In the case *sub judice*, although the government has raised doubt as to payment of legal fees by each individual witness, it has not sustained its burden of proof on such issue.

in stripping appellants of the counsel of their choice." [15]

The D.C. Circuit espoused a similar view in *In Re Investigation Before April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600 (1976). The issue thus arises whether or not an actual conflict exists so as to make the motion for disqualification ripe for determination as it relates to the afore-mentioned other witnesses.

Respondents have indicated an intention to withdraw from representation if an actual conflict of interest arises such as through an offer of immunity or non-prosecution.[16] Upon the government's formal offer of non-prosecution at the hearing before this Court, respondents honored their represented intentions and withdrew as counsel for witnesses Thompson, Nabors, Lanning, and James Johns. These circumstances fall clearly within the proscriptions enunciated by the Court of Appeals for the Third Circuit. Absent some indication that the government is seeking to obtain statutory immunity for these other witnesses or willing to grant a formal promise of non-prosecution, the motion for disqualification as to these particular witnesses is not ripe for judicial intervention. The *sine qua non* of the government's motion—an actual conflict of interest—is lacking.[17]

Accordingly, the government's motion for disqualification must be denied insofar as it relates to Grand Jury witnesses Gregory Kocan, Rickard Jenkins, John Halas, Glen Gossard, James Calderone and Jerry Barnhouse.

## CONCLUSION

The Constitutional limitation of Article 3, Section 1 *et seq.* precludes the rendering of advisory opinions. Accordingly, the decision-making power of this Court is circumscribed by the facts *sub judice*. Thus, today's opinion only passes on the right of respondents to represent these Grand Jury witnesses for the purpose of Grand Jury proceedings. No opinion is hereby expressed as to multiple representation at trial should any of the witnesses be indicted.

In summary, we hold that the government's motion for disqualification be denied insofar as it relates to respondents' representation before the Grand Jury of witnesses Gregory Kocan, Richard Jenkins, John Halas, Glen Gossard, James Calderone and Jerry Barnhouse. We further hold that respondents are disqualified from representing witness Phyllis Johns before the Grand Jury. An appropriate Order was entered on June 28, 1977.[18]

---

**15.** *Matter of Grand Jury Empaneled January 21, 1975, supra*, at 1012–13.

**16.** See pp. 821–822.

**17.** The government reads the holding in *Matter of Grand Jury Empaneled January 21, 1975, supra*, to mean that the issue becomes ripe as to all witnesses whenever the government has made an offer of immunity to *any* witness. Tr. p. 386. Such an interpretation would presumably allow judicial intervention because Phyllis Johns has both statutory immunity and a formal offer of non-prosecution. The government misconceives the thrust of the Third Circuit's opinion. Its purpose was to define the birth of an actual conflict of interest. That different witnesses may be in different positions vis a vis the government, even though represented by common counsel, is the heart of this proceeding. Thus, while respondents continued representation of Phyllis Johns constituted a very real conflict of interest, there is no suggestion by Judge Aldisert that such conflict should taint those witnesses who have no immunity or promise of non-prosecution. The government's interpretation would result in an undesirable bootstrapping of Grand Jury witnesses whose common legal representation is not counterproductive to the Sixth Amendment guarantee of effective legal assistance. It would also open the door to disqualification of counsel whose advice to his clients the government does not like.

**18.** This Court, as an incident to its supervisory power over the Grand Jury also has the power to discipline an attorney whose unethical conduct relates to Grand Jury proceedings. *In Re Gopman*, 531 F.2d 262 (5th Cir. 1976). The existence of such power, however, does not automatically necessitate its exercise. Action by the Pennsylvania Disciplinary Board is the more appropriate procedure should discipline be warranted. Accordingly, we express no opinion as to the ethical propriety of respondents' multiple representation.