**UNITED STATES of America**

v.

**FMC CORPORATION, David C. Landgraf, Ernest C. Ladd.**

**Crim. No. 80–91.**

United States District Court, E. D. Pennsylvania.

July 25, 1980.

William B. Lytton, Asst. U. S. Atty., Peter F. Vaira, U. S. Atty., for the Eastern Dist. of Pa., Philadelphia, Pa., for the government.

James D. Crawford, Joseph A. Tate, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for FMC Corp.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

A federal grand jury has indicted the defendants in this case, the FMC Corpora-

tion (FMC) and two of its employees, David C. Landgraf and Ernest C. Ladd for violations of 18 U.S.C. §§ 371, 1001, and 1505.[1] The indictment alleges the following facts. From approximately 1974 to 1977, a South Charleston, West Virginia chemical manufacturing plant operated by defendant FMC manufactured a chemical known as carbon tetrachloride (CTC). As a result of this manufacturing process, FMC purportedly discharged wastewater, containing various chemicals including CTC, into the Kanawha River. As a consequence of this discharge, it is alleged, the public drinking water supplies of various cities down river from FMC's South Charleston plant contained CTC, allegedly a toxin and carcinogen. The government contends that the defendants entered into a conspiracy to prevent the United States Environmental Protection Agency (EPA) from carrying out its duties to protect the "chemical, physical and biological integrity" of the Nation's waters as required by 33 U.S.C. § 1251 et seq. In effect, the indictment charges that the defendants failed to submit certain information regarding the discharge of CTC from the FMC plant into the Kanawha River, thereby hindering or obstructing the proper administration of the law by the EPA.

Now before the Court is the government's motion to disqualify the law firm of Schnader, Harrison, Segal and Lewis (Schnader) from representing FMC or any other defendant in this matter. After considering the various affidavits and arguments advanced by the parties in their memoranda as well as the testimony of the witnesses at the evidentiary hearing on the motion, I find that the government has not established the necessity of disqualifying the Schnader firm. Therefore, I will deny the motion.

This motion to disqualify arises out of the following undisputed facts. FMC retained Joseph A. Tate, Esquire, a member of the Schnader firm, to represent certain FMC employees as well as members of a law firm which had served as the corporation's outside counsel when they appeared as witnesses before the grand jury which handed down the indictment in this case.[2] During the grand jury investigation, Thomas A. Bergstrom, Esquire, dealing primarily with the grand jury subpoenas for corporate documents, represented FMC as a corporation. After FMC, Messrs. Ladd and Landgraf were indicted, the corporation retained Schnader to represent it in the trial of this matter. The government now argues that the Schnader firm must be disqualified from representing any defendant in this case because its former representation of FMC employees during the grand jury investigation creates a conflict between the interests of FMC and the interests of the FMC employees who will be called to testify at the trial as government witnesses. Schnader asserts, and the government has not challenged this assertion, that at present the government plans to call only one FMC employee, Mr. Festus Roseberry, who was represented by Schnader during the grand jury proceedings. The government has also identified three other employees formerly represented by Schnader as potential witnesses at trial: Richard B. Carroll, Thomas E. Epley and Douglas E. Kliever.

It is the contention of the government that permitting Schnader to continue its representation of FMC will create an irresoluble conflict of interest. As attorney for FMC, so it is argued, the law firm will be required on cross-examination to undermine the credibility and recollection of witnesses formerly represented by it on matters identical to those at trial. According to the government, Schnader will have to choose either to provide FMC with effective assistance of counsel and divulge the confidences of its former clients or to protect those

---

1. At all times relevant to the present indictment, defendant Ladd held the title of Environmental Manager for Water and Land with the Energy/Environmental Planning Department at FMC while defendant Landgraf was Legal Counsel to that same department.

2. It is undisputed that the Schnader firm represented only those employees and those lawyers who were not "targets" of the investigation.

confidences at the cost of giving FMC inadequate representation.

In response, Schnader and FMC maintain that no such conflict exists because none of the four potential government witnesses have disclosed any confidential information to any member of the Schnader firm. The testimony of the four people given at the fact-finding hearing on this motion supports this position. Responding to questions posed by the Court, the government and attorneys for FMC, Messrs. Roseberry, Carroll, Epley and Kliever all testified that they did not give any information to the Schnader lawyers which they considered confidential or which they believed could be used against them during cross-examination at trial in this case. In addition, all four stated they were willing to waive any rights of confidentiality owed them by Schnader as their former attorney. After questioning the witnesses regarding their decisions to make such waivers, I am satisfied that the waivers were voluntarily and knowingly made. All four men are well-educated and hold professional positions involving considerable responsibility.[3] I believe that they understand both what constitutes confidential information and the implications of their waiver of the attorney-client privilege.

■ First, addressing the Court in its role as a supervisor of members of the bar, the government argues that disqualification of Schnader is required by Canons 4, 5 and 9 of the Code of Professional Responsibility.[4] Canon 4 states that a "lawyer should preserve the [confidential communications] of his client." This Canon prohibits an attorney from disclosing confidences divulged by a client; this duty continues even after the relationship has ended. Ethical Consideration 4–1. Under certain limited circumstances a lawyer may reveal the confidences of a former client, but she may not use such confidential information in a manner that would disadvantage that client. Ethical Consideration 4–5.

■ The rationale underlying Canon 4 is that an individual should be encouraged to reveal all pertinent information to his lawyer. A client would be reluctant to confide in his lawyer if he thought his confidences might later be used against him. Consequently, a lawyer should not accept employment that might result in a misuse of confidential information entrusted to her by a client. In the case now before me, however, the moving party has failed to show that there exists any confidential information to be disclosed. The uncontradicted testimony of the four former Schnader clients who may be called as government witnesses is that they never imparted confidences to their lawyers. Therefore, there is no reasonable basis to conclude that any violation or potential violation of Canon 4 would necessitate the disqualification of the Schnader firm in this case.

The motion to disqualify also argues that the continued representation of FMC by the Schnader firm will violate the requirement of Canon 5 that "a lawyer should exercise independent professional judgment on behalf of a client." The consideration underlying Canon 5, as the government points out, is that a client is entitled to legal representation which is not compromised by conflicting claims on the loyalty of his lawyer. In the present case, the fact that the Schnader firm formerly represented persons who may now be called to testify against FMC suggests the possibility that the law firm may not be able to exercise fully independent judgment in its representation of FMC. However, since the testimony is that

---

**3.** Both Mr. Carroll and Mr. Kliever are attorneys; the former is Associate General Counsel for FMC and the latter is a partner in a New York City law firm. Mr. Roseberry is the manager of one of FMC's chemical plants while Mr. Epley, who has degrees in mechanical engineering and business administration, is General Manager of FMC's Specialties Chemical Division.

**4.** Since the Eastern District of Pennsylvania has adopted the ABA's Code of Professional Responsibility as part of the Local Rules of Criminal Procedure, lawyers appearing before this Court are bound legally as well as ethically to follow the Code. *Baglini v. Pullman, Inc.*, 412 F.Supp. 1060, 1063 (E.D.Pa.1976).

the four potential witnesses never divulged any confidential information to their lawyers during the grand jury investigation, there is no evidence that Schnader's former representation of them creates a conflicting loyalty which would hinder the law firm's ability to exercise its independent judgment on behalf of FMC. Therefore, the Canon 5 argument made by the government must also fall.

Canon 9 of the Code of Professional Responsibility states: "A lawyer should avoid even the appearance of professional impropriety." The purpose of Canon 9 is to preserve public confidence in the bar and in the legal process. Therefore, a lawyer can be disqualified from representing a party if circumstances would suggest some impropriety. In the present case, the government argues that the fact of Schnader's prior representation of FMC employees who may now be called to testify against FMC creates an appearance of impropriety.

I am mindful of my duties to supervise the conduct of members of the bar who appear before me and to help maintain public confidence in the legal profession. *Richardson v. Hamilton International Corporation*, 469 F.2d 1382, 1385 (3d Cir. 1972). However, I do not believe that the facts of this case necessitate a disqualification of counsel for FMC on the basis of an appearance of impropriety. At the fact–finding hearing on this motion, the four former clients of Schnader testified that they had not divulged confidences to the Schnader lawyers. This testimony, coupled with the fact that it is the government rather than any interested present or former client of the Schnader firm who has brought this motion to disqualify, convinces me that no genuine appearance of impropriety exists.

The most substantial claim raised by the instant motion to disqualify current counsel for FMC is one based on the Sixth Amendment of the United States Constitution. The Sixth Amendment's guarantee that a criminal defendant have assistance of counsel "contemplates that such assistance

be untrammeled and unimpaired." *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942). That is, an attorney cannot provide effective assistance of counsel as required by the Sixth Amendment unless her undivided loyalties lie with her client. The government, appropriately concerned that this matter be decided before trial, contends that Schnader's prior representation of some potential government witnesses creates a conflict of interest which will hinder the law firm's ability to give effective representation to FMC. Specifically, the government argues that Schnader will not be able to thoroughly cross–examine witnesses who have previously been clients of the firm.

Relying primarily upon the recent decision of the Third Circuit in *United States v. Dolan*,[5] the government claims that the facts of this case present a serious and actual conflict of interest, that any waiver offered by FMC is not valid and that the Court need not accept that waiver because the conflict of interest involved in the case will impair Schnader's ability to conform with the Code of Responsibility and necessarily will result in inadequate representation of FMC.

FMC and the Schnader law firm maintain that the present motion to disqualify counsel is without merit. According to the Schnader lawyers, they have carefully examined the circumstances of their prior representation of the four potential government witnesses and determined that no conflict of interest exists which would prejudice their former clients or their present client, FMC. In addition, the FMC Corporation via its president, Raymond Tower, has stated in both an affidavit and in oral testimony that it is willing to waive any right the corporation might have had to assert that it had been deprived of effective assistance of counsel on the ground that its lawyer, the Schnader firm, failed to cross–examine effectively any government witnesses who were formerly represented by that law firm. During the hearing on this motion, I questioned Mr. Tower about

**5.** 570 F.2d 1177 (3d Cir. 1978).

FMC's decision to make such a waiver of effective assistance of counsel. I am satisfied that Mr. Tower has made this waiver on the part of the corporation with a full understanding of its possible ramifications. Thus, given the absence of disclosure of confidential information by Messrs. Roseberry, Carroll, Epley and Kliever, the waiver made by them, the waiver made by FMC and my analysis of the relevant case law, I find that the Sixth Amendment does not require disqualification of the Schnader firm as counsel for FMC.

The opinions cited by the government are generally inapplicable to an analysis of the issues raised by this motion. First, the government's reliance on the decision in *U. S. v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), is misplaced. The facts of the *Dolan* case are so dissimilar to those found in this case that the decision's applicability to the matter at hand is very limited. In *Dolan*, co–defendants John Dolan and Michael Garofolo retained one attorney to represent them on charges of unlawful possession of chattels stolen from foreign commerce. On the eve of trial, their attorney asked the prosecutor if he would dismiss the charges against Dolan in exchange for Garofolo's guilty plea. The attorney, however, did not apprise Mr. Garofolo of his proposal. Although the government rejected the "deal", the next day Garofolo pleaded guilty. The trial judge conducted a hearing,[6] questioning Garofolo and his attorney about possible prejudice resulting from the joint representation. Garofolo's guilty plea was accepted, and Dolan went to trial. Testifying on his own behalf, Dolan stated that Garofolo was the force behind the criminal scheme and that he, Dolan, had believed the operation to be lawful. The government then subpoenaed Garofolo as a rebuttal witness. The judge asked the attorney how he possibly could give legal advice to Garofolo or cross–examine him while he continued to represent Dolan. Although the attorney maintained that no conflict of interest existed, the judge ordered him to withdraw from representation of either Garofolo or Dolan. Dolan, persisting in his desire to have that lawyer represent him, appealed the order.

On review, the Third Circuit, affirming the order of the district court, held that a court need not accept a defendant's waiver of effective assistance of counsel when there is an actual conflict of interest which "impairs the ability of a criminal defend-ant's chosen counsel to conform with the ABA Code of Professional Responsibility." 570 F.2d at 1184. However, the case now before me does not involve joint and con-current representation of criminal co–defendants nor does it involve the kind of conduct exhibited by the defense attorney in *Dolan, supra.* Indeed, the evidence shows that the Schnader firm did not acquire any confidential information from its former representation of the four potential government witnesses. Accordingly, the holding of *U. S. v. Dolan, supra,* is not controlling as to the issues raised by the instant motion where there is no evidence of an actual conflict of interest.

Citing the decision in *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978), the government also argues that a client may not consent to the breach of the attorney–client relationship if as a result confidential information will be used against him by his attorney. The holding of the *Westinghouse* case is not as broad as the government has stated it to be. The *Westinghouse* suit involved an antitrust action for alleged price–fixing against various uranium producers. Gulf Oil Corporation, one of the defendants, moved for the disqualification of a Santa Fe, New Mexico law firm who represented another defendant, United Nuclear Corporation (UNC) but who had formerly represented Gulf. Because UNC was attempting to exculpate itself by inculpating Gulf, the interests of

---

6. In *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), the Court of Appeals found that criminal co–defendants should be warned of the possible prejudices that might arise if they are represented by the same law-yer. The trial court should also conduct an inquiry into the possible prejudices of such joint representation as they might arise in each individual case.

Gulf and UNC were adverse. After overturning the lower court's denial of the motion to disqualify, which had been based on a finding that there was not a substantial relationship between the subject matter of the two representations, the Court of Appeals addressed UNC's argument that Gulf had waived any right it might have to seek disqualification. The Seventh Circuit rejected UNC's argument both because they apparently disbelieved UNC's description of the nature of the waiver supposedly obtained from Gulf and because any such waiver was acquired prior to any threat of disclosure or adverse litigation. 588 F.2d at 229.

Although it is true that in the *Westinghouse* decision the Seventh Circuit, in dicta, did express doubt about the permissibility of a client authorizing an attorney to use against him any confidential information given to the attorney, the holding of the case is very narrow. The Court stated:

> . . . we hold that a simple consent by a client to representation of an adverse party is not a defense to that former client's motion for disqualification, such as the one under review here, based on the possibility that confidential information will be used against the former client. *Id.*

Since the case now before me does not involve either a general waiver given some time before litigation, a potential use of confidential information against a former client or an action by the supposedly waiving party to disqualify an opponent's lawyer, both the facts and the holding of *Westinghouse, supra*, have minimal relevance to an analysis of the questions raised by the instant motion.

The government further argues that any waiver by the four potential government witnesses in this case is not valid because as employees of FMC they cannot but feel coerced by the desire of their employer that they waive. In support of this theory, the government cites *In Re Grand Jury Investigation*, 436 F.Supp. 818 (W.D.Pa.1977). In that case, the district court granted in part a motion filed by the government to disqualify counsel. The United States Attorney for Pittsburgh sought to disqualify, on the basis of conflict of interest, two lawyers who were representing eleven people who had been called as witnesses before a grand jury investigating the interstate distribution of pornographic and obscene material. One of these witnesses had been given statutory use immunity as well as an offer of non–prosecution. Although she agreed to waive her right to conflict–free assistance of counsel, the trial court found that her waiver was not knowing and intelligent as required by the standards set forth in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The court's decision in *In Re Grand Jury Proceedings, supra*, was based in part on the fact that one of the other witnesses, who was a "target" of the investigation and a prospective defendant, was this witness' employer. The court noted that her waiver was likely a result of her "natural hesitancy to alienate [her] employer." 436 F.Supp. at 821. However, the decision was also based on the court's belief that a lawyer cannot effectively represent a person who is operating under a grant of statutory use immunity and another who is a prospective defendant who might be hurt by the testimony of the witness who has been granted immunity. The case at bar does not present such a conflict. Interestingly, the court in *In Re Grand Jury Proceedings, supra*, declined to adopt a *per se* rule about joint representation of an employer and employee and specifically stated that it's decision was limited to the facts *sub judice*. 436 F.Supp. at 822.

The case law most relevant to the instant motion is that dealing with the potential conflict of interest created when counsel for a criminal defendant is required to cross–examine a government witness who is a former client of that attorney. In *United States v. Jeffers*, the Seventh Circuit noted that in cases involving an alleged conflict of interest based on the prior representation of a prosecution witness by defense counsel the courts have generally examined the par-

ticular circumstances to determine if counsel's "undivided loyalties" lie with her current client. 520 F.2d 1256, 1264 (7th Cir. 1975). Judge (now Justice) Stevens found that there are two factors to be considered in making such a determination. First, is the lawyer's pecuniary interest in possible future business likely to cause her to be less vigorous in her cross–examination of the witness who is a former client? Secondly, will any confidential information received by the defense counsel from her former client who is now a government witness be relevant to the cross–examination of that witness?

In the instant case, there is no evidence that the pecuniary interest of the Schnader law firm lies other than with its present client, FMC. The second part of the *Jeffers* standard is easily assessed in this case. Both Schnader and the four potential government witnesses maintain that no confidential information passed to the law firm from these former clients. Absent evidence to the contrary, I accept their characterization of their attorney–client relationships. The following observation made by Judge Stevens in the *Jeffers* case is relevant to this case:

> Most obviously, there might be a temptation to use [confidential] information to impeach the former client. We do not regard this risk as serious, however, for we think the courts can generally rely on the sound discretion of members of the bar to treat privileged information with appropriate respect. Moreover, in cases in which this concern does seem significant, it is the witness, rather than the defendant, who should object to the cross–examination by his former attorney. 520 F.2d at 1265.

For all of the foregoing reasons, I enter the attached order denying the government's motion to disqualify the law firm of Schnader, Harrison, Segal and Lewis.