### UNITED STATES

v.

### Tyrone MARTIN.

### Criminal Action No. 00–710.

United States District Court,
E.D. Pennsylvania.

Oct. 5, 2006.

---

Joseph G. Poluka, U.S. Attorneys, Phila, PA, for United States.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Tyrone Martin has filed a *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2255 asking this Court to vacate, set aside, or correct his sentence. He presents three arguments in support of his petition: (1) the violation of his Fourth Amendment rights; (2) ineffective assistance of counsel; and (3) prosecutorial misconduct.

## I. BACKGROUND

Following a jury trial in this Court, Tyrone Martin was convicted of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and with carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On November 13, 2001, Martin filed a motion for post-trial relief, claiming that the government violated the Third Circuit's ruling in *United States v. Watson,* decided after his trial. 260 F.3d 301 (3d Cir.2001). He also alleged that this Court erred in failing to suppress evidence seized in a car stop.[1] In a Febru-

---

1. Martin claimed that under the recent decision of *United States v. Watson,* Detective Matthew McDonald's testimony as to the defendant's state of mind improperly violated Federal Rule of Evidence 704(b). The *Watson* court found that "the Government violat-

ary 7, 2002 Memorandum and Order, the Court denied this motion. This Court sentenced Martin to a total of 144 months of imprisonment, five years supervised release, a $1,000 fine and a $200 special assessment. Martin subsequently appealed, and on April 16, 2003, the Third Circuit affirmed the judgment of conviction and the sentence.

## II. ANALYSIS

 Section 2255 allows a prisoner in custody to attack his sentence if it was imposed in violation of the Constitution or statute, if the court lacked jurisdiction to impose it, if it exceeds the maximum allowed by law, or if it is otherwise subject to collateral attack.[2] *See* 28 U.S.C. § 2255. The petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that the prisoner is not entitled to relief. *See United States v. Nino,* 878 F.2d 101,

103 (3d Cir.1989). The decision as to whether the files and records of the case conclusively show that the prisoner is entitled to no relief is within "the sound discretion of the district court." *United States v. Williams,* 615 F.2d 585, 591 (3d Cir.1980). In exercising that discretion, however, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. *Id.*

### A. Violation of the Fourth Amendment

Martin contends in his petition that the stop of his vehicle was without probable cause and thus violated his Fourth Amendment rights.[3] Martin already contested this issue in a pre-trial suppression hearing, at his trial, and in a post-trial motion. The Third Circuit also addressed the stop of Martin's vehicle on his direct appeal. *U.S. v. Martin,* No. 02–1435, 69 Fed.Appx. 46, 2003 WL 1879218 (3d Cir. April 16, 2003).

---

ed Rule 704(b) by repeatedly eliciting its experts testimony as to Watson's mental state and the purpose of his actions." *United States v. Watson,* 260 F.3d 301, 310 (3d Cir. 2001). This court found that the evidence uncovered in defendant's vehicle was properly admitted at trial. This court also found that the introduction of Detective McDonald's testimony was not error, and, even if it was, it was not plain error. Thus, the defendant's request for a new trial was denied.

2. Section 2255 also has a one-year statute of limitations that requires the petition to be filed within one year of the date in which defendant's conviction became final. *See* 28 U.S.C. § 2255. Martin's petition was timely filed on July 14, 2004. Judgment on the appeal was entered on April 16, 2003; ninety days from that date is July 15, 2003. The one-year period to file a § 2255 motion for this defendant thus ended on July 14, 2004, the date Martin gave his petition to prison officials and thus was deemed filed. *See Burns v. Morton,* 134 F.3d 109, 112 (3d Cir. 1998) (holding that pro se habeas petitions are deemed filed when placed within the prison mail system).

3. In Martin's reply brief, he points out for the first time that he never appealed the search of his vehicle to the Third Circuit, but rather only the stop of his vehicle. Therefore, he claims, the Third Circuit never addressed the search of his vehicle. The Court declines to address any issue raised for the first time in a reply brief. A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues. *See United States v. Medeiros,* 710 F.Supp. 106, 109 (M.D.Pa.1989) ("It is improper for a party to present a new argument in [a] reply brief."), *aff'd* 884 F.2d 75 (3d Cir.1989); *United States v. Voigt,* 89 F.3d 1050, 1064 (3d Cir.1996) (noting issues not identified in appellate brief constituted waiver); *Nagle v. Alspach,* 8 F.3d 141, 143 (3d Cir.1993) (declining review of issue mentioned just "casually in one sentence"). *Lunderstadt v. Colafella,* 885 F.2d 66, 78 (3d Cir.1989) (raising issue for first time in reply brief insufficient to preserve issue for review).

On Martin's direct appeal, the Third Circuit determined that under the totality of the circumstances, there was probable cause to stop Martin's vehicle: (1) Martin was driving his vehicle late at night; (2) he circled the block three or four times; (3) the area of the block was one where there was on-going drug activity; (4) he was driving a rented vehicle with out-of-state tags; and (5) the two officers respectively had four and five years' experience as Philadelphia police officers. 69 Fed.Appx. at 48, 2003 WL 1879218 at *48.

In support of its decision, the Third Circuit explained that:

Here, the information known to the officers at the time of the investigatory stop is substantially similar to that which was known to the officers in *United States v. Rickus*, 737 F.2d 360 (3d Cir.1984). There, we held that an investigatory stop by experienced police officers was supported by reasonable suspicion where the officers first observed the defendants' vehicle driving through a closed business district at 3:30 a.m. at 15–20 miles per hour below the speed limit and then turn into a residential area that had recently been victimized by a spate of burglaries. 737 F.2d at 365. We think our decision in *Rickus* is dispositive.

*Id.*

■ A Section 2255 petition may not be employed to relitigate questions which were raised and considered on direct appeal. *United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir.1993); *see also See United States v. Lawton*, No. 01–630, 2005 U.S. Dist. LEXIS 6123, at * 10 (E.D.Pa. Mar. 21, 2005) (same). Therefore, this Court need not address once again whether the stop of Martin's vehicle was supported by probably cause because it was already adjudicated on direct appeal, and Martin is precluded from relitigating it here.

### B. Ineffective Assistance of Counsel.

Martin also argues that he received ineffective assistance of counsel because: (1) his trial counsel, Tariq Karim El–Shabazz, failed to inform Martin that he had previously represented Johnny Culpepper, one of the government witnesses who testified at trial; (2) his trial counsel (both initially appointed Federal Defender David M. Kazlow and then retained counsel Mr. El–Shabazz) failed to inform him of a plea offer made by the government; (3) Mr. El–Shabazz failed to assist or communicate with Martin during the critical stages of the trial; (4) trial counsel failed to object when the prosecutor asked Martin if certain of the government's witnesses were "lying;" (Trial Tr. 182, June 20, 2001) and (5) counsel failed at trial and sentencing to contest the drug amount for sentencing guideline purposes.

■ The law is clear that a defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To gain relief for a violation of this right, a defendant must show both unprofessional conduct and resulting prejudice. *Id.* More precisely, the claimant must show that: (1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, *see id.* at 687–91, 104 S.Ct. 2052; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different," *id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

#### 1. Conflict of Interest

■ Martin alleges that during cross-examination, counsel disclosed for the first time "that he represented Mr. Culpepper in the past." (Pet.5B). Martin claims that

El–Shabazz's representation of Mr. Culpepper in the past "was fraught with the danger of dividing counsel's loyalties as to justify a present finding of a Sixth Amendment violation as a result of conflicting interests." (Pet.5B).

 If there is a conflict of interest between counsel and the client, prejudice under the *Strickland* test is presumed. *Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 134 (3d Cir.1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Following that presumption, the petitioner need only show that the actual conflict "adversely affected counsel's performance" to prove ineffective assistance of counsel. *See id. at 134.* The Third Circuit has defined an actual conflict as follows: "if, during the course of representation, the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* at 136 (citing *Sullivan v. Cuyler*, 723 F.2d 1077 (3d Cir.1983).

There appears to be no Third Circuit decision dealing directly with the potential conflict of interest created when counsel for a criminal defendant is required to cross-examine a government witness who is a former client of that attorney. In *United States v. FMC Corp.*, however, the Honorable Judge Green faced a situation similar to the allegations presented here by Martin. 495 F.Supp. 172 (E.D.Pa. 1980). In that case, the government had filed a motion to disqualify the defense counsel based on an alleged conflict of interest because four witnesses for the government were defendant's employees and legal counsel's former clients. *Id.* at. 174. The Court noted that in cases involving an alleged conflict of interest based on the prior representation of a prosecution witness by defense counsel, the courts have generally examined the particular circumstances to determine if counsel's "undivided loyalties" lie with his current client. *Id.* at 178–79 (citing *United States v. Jeffers*, 520 F.2d 1256, 1264 (7th Cir.1975), *writ of certiorari denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976)). In particular, courts have examined: (1) whether the lawyer's pecuniary interest in possible future business likely to cause him to be less vigorous in her cross-examination of the witness who is a former client; and (2) whether any confidential information received by the defense counsel from his former client who is now a government witness will be relevant to the cross-examination of that witness. *Id.* The government's motion to disqualify was denied because neither of these two conditions were shown to obtain. *Id.; c.f. (United States v. Moscony*, 697 F.Supp. 888, 893 (E.D.Pa.1988) (motion to disqualify granted where witnesses testified that they revealed confidential information to defense counsel which could be used against them during cross-examination at trial).

This Court finds that petitioner is entitled to an evidentiary hearing on his claim for ineffectiveness of counsel, based on his allegations that Mr. El–Shabazz previously represented Mr. Culpepper. At the hearing, petitioner will have the opportunity to show whether Mr. El–Shabazz represented Mr. Culpepper in the past,[4] and if he did, whether Mr. El–Shabazz had a continuing financial interest in his relationship with Mr. Culpepper and how, if at all, the past representation provided Mr. El–Shabazz with confidential information that affected his representation of the petitioner.[5]

---

4. The government has represented that in an August 16, 2005 telephone conversation between Assistant United States Attorney Joseph G. Poluka and Mr. El–Shabazz, Mr. El–Shabazz called the allegation that he had represented Mr. Culpepper in the past an "absolute lie."

5. The Court notes that the transcript of the trial testimony demonstrates that El–Shabazz conducted a thorough cross examination of Mr. Culpepper that effectively brought to light Mr. Culpepper's criminal history, his interest in testifying for the government, and numerous inconsistencies in his testimony and prior statements. N.T., June 20, 2001, 22–44.

### 2. The Plea Offer

██ Martin next claims that his trial counsel (both Mr. Kozlow and Mr. El–Shabazz) failed to inform him of a plea offer made by the government. He claims that Assistant U.S. Attorney Poluka sent his defense attorney a discovery packet including a cover letter containing the government settlement offer, which stated that if defendant pleaded guilty, the government would recommend "at the time of sentencing [that Defendant] receive a two point reduction in his base offense level for acceptance of responsibility pursuant to Sentencing Guideline 3E1.1." (Pet.5B). Martin alleges that he would have accepted the plea offer if he had known about it. He also claims that trial counsel failed to inform him about the law in relation to the plea and about the maximum penalty. (Pet.5B).

The government has not contested that Mr. El–Shabazz's alleged failure to advise Martin of a plea offer would constitute ineffective counsel, but instead refutes the existence of such an offer. The government states that it does not recall ever making a plea offer in this case and does not have any record of such a plea offer within its files. Indeed, this Court notes that Martin has not provided the date of the cover letter containing the plea offer,[6] let alone a copy of the letter itself. Nor has he described how he ever came to learn of such a plea offer so many years later.

██ The Third Circuit has stated that the plea bargain stage is a "critical stage" at which the Sixth Amendment right to effective assistance of counsel attaches. *See United States ex. rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir.1982). In *Caruso,* a petitioner alleged that the county prosecutor had offered his trial counsel a plea bargain whereby in exchange for a guilty plea on one murder charge, all other charges would be dropped. The petitioner claimed that his counsel never communicated the offer to him, and that, as a result, he stood trial and received a mandatory life sentence instead of the lesser sentence that he would have received under the plea bargain. *Id.* at 437. The Third Circuit held that "[t]he decision to reject a plea bargain offer and plead not guilty is a decision for the accused to make. It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." *Id.* Accordingly, the petitioner's allegations stated a Sixth Amendment claim. *Id.* at 437–38.

██ a proceeding under 28 U.S.C.A. § 2255, the petitioner bears the burden establish "with specific evidence" that relief is warranted. *See Martin v. U.S.,* 463 F.2d 220, 221 (3rd Cir.1972). In *Martin,* the Third Circuit Court of Appeals found that a Section 2255 petitioner who had raised the issue of mental incompetence failed to meet his burden of showing incompetence, because he offered "no specific evidence" of his mental incompetence at the time of his trial or sentencing. *Id.* Here too, the paucity of Martin's description of the plea offer, the circumstances in which it was made, and the manner in

---

6. Martin's typed petition states: "On _____ Assistant U.S. Attorney _____ sent defendant attorney (sic) a discovery packet including a cover letter containing the government settlement offer." In the second blank, Martin has handwritten the name "Poluka." (Pet.5B). The petition later continues that "[t]he letter stated that the settlement offer would expire at _____." In this last blank Martin handwrote "N/A."

which he learned of it does not offer much "specific evidence" to support his claim.

The case of *United States v. Day* is controlling in this situation. 969 F.2d 39 (3d Cir.1992). In *Day*, a habeas petitioner alleged that his attorney advised him of a plea offer from the government, but "the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Id.* at 42. The district court dismissed his petition without providing Day an evidentiary hearing. The Third Circuit reversed, concluding that "if Day is correct that he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." *Id.* at 44. The Court made this conclusion notwithstanding the fact that it did "not know at this juncture whether the government in fact made a five-year plea bargain offer to Day." *Id.* The Court found that "further proceedings are necessary to determine whether [counsels'] performance was in fact deficient." *Id.*

As in *Day*, it is difficult to say here that the files and records of the case conclusively show that Martin is entitled to no relief on this particular claim when Martin has not yet been afforded the opportunity to provide additional "specific evidence" at an evidentiary hearing.

As to the showing of prejudice, *Caruso* made clear that an attorney's failure to communicate a plea offer causes prejudice to his client:

> The State argues that because Caruso received a fair trial he is not entitled to a habeas remedy even if he could prove ineffective assistance of counsel in the manner alleged. This argument is untenable on the plea bargaining issue.

> Failure by defense counsel to communicate a plea offer to defendant deprives defendant of the opportunity to present a plea bargain for the consideration of the state judge and, on acceptance by the state judge, to enter a guilty plea in exchange for a lesser sentence. A subsequent fair trial does not remedy this deprivation.

689 F.2d at 438 (citation omitted).

Here, Martin claims that he would have accepted the plea offer if he had known about it and received a lesser sentence as a result. The Court need not decide whether Martin's self-serving statement would be sufficient, by itself, to establish a "reasonable probability" that he would have accepted the plea agreement, as again, Martin "has not had a chance to make a full record." *Day*, 969 F.2d at 45 (defendant's allegation that he would have accepted plea offer if properly advised by counsel was sufficient prejudice to warrant hearing on claim of ineffective counsel).

This Court finds that petitioner is entitled to an evidentiary hearing on his claim for ineffectiveness of counsel based on his allegations that Mr. El–Shabazz failed to inform him of the government's making a plea offer that may have resulted in a two-point reduction in his base level sentence for acceptance of responsibility.

### 3. Failure to Assist and Communicate

█ Martin also alleges that Mr. El–Shabazz failed to assist and communicate with him during the critical stages of trial. He claims that Mr. El–Shabazz "failed to file supplement brief to the suppression hearing after the Judge Robreno order both parties to file supplementary brief on suppression issues (sic).[7]" Nor, he claims, did Mr. El–Shabazz ever meet with him

---

7. As an initial matter, the Court indeed ordered on March 17, 2001 that counsel submit supplemental briefing on Defendant's Motion to Suppress. However, defendant did submit the requested supplemental briefing on April 16, 2006.

during his representation over a six-month period before trial or even speak to El-Shabazz in court. Martin claims that because consultation, a thorough investigation, and preparation were vitally important to his defense, counsel's failure to assist or communicate during these critical stages constituted complete denial of his Sixth Amendment right to counsel. (Pet.5B).

All of the allegations against counsel above-mentioned go to the reasonableness of counsel's actions, the first prong of the *Strickland* test. Here, counsel's reasonableness need not be discussed at length, because *Martin fails to make a showing of prejudice under the second prong of Strickland.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding ... and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693, 104 S.Ct. 2052. While, if true, Martin's allegations would certainly be disturbing, Martin has not asserted, as he must, how or why there is a reasonable probability that, but for his counsel's alleged unprofessional errors, the result of his case would have been different.

### 4. Failure to Object to Questions About "Lying"

■ Martin next claims that counsel offered ineffective assistance because trial counsel failed to object when the prosecutor asked during the cross-examination of Martin if the government's witnesses were "lying," since the government's witnesses and the defendant's testimonies had different versions of the facts. (Pet. 5B; Trial Tr., 182, June 20, 2001).

Courts are split on whether or not such questions are proper, and there is no controlling precedent in this Circuit. In other jurisdictions, many courts have held that, because "determinations of credibility are for the jury", and not for witnesses, ... "questions that ask a defendant to comment on another witness' veracity invade the province of the jury." *State v. Graves,* 668 N.W.2d 860, 871 (Iowa 2003). However, courts have allowed such questioning when the contradiction between the defendant's testimony and that of another witness can only be explained by the conclusion that someone is lying. *See, e.g., State v. Morales,* 198 Ariz. 372, 10 P.3d 630(Ariz.Ct.App.2000). These courts reason that where "the defendant has created a credibility contest," a prosecutor has the right to "cross-examine a defendant as vigorously as possible." *People v. Overlee,* 236 A.D.2d 133, 666 N.Y.S.2d 572, 577 (App.Div.1997). Finally, some courts have held that asking the defendant whether another witness is lying is proper, apparently under any circumstances. *E.g. Dorsey v. State,* 259 Ga. 809, 387 S.E.2d 889 (1990).

Here, the heart of the defendant's case was that the police were lying. *See* Trial Tr. 54, June 21, 2001 ("But there are people who belong to [the Philadelphia Police] department that go out and do their job with malice in their hearts, and lies, and manipulation, and conspiracy."). The defendant himself even testified that the police officers were lying, saying, for example, that "Sergeant Katz is just a liar out of this world." Trial tr., 169, June 20, 2001. Defendant created a credibility contest by casting aspersions on the government witnesses. The government was entitled to probe these aspersions on cross-examination. The failure to object to those questions did not constitute prejudice.

### 5. Failure to Contest Drug Amount for Sentencing

■ Martin also contends that counsel failed to contest the amount of drugs found

in his possession for sentencing purposes, pointing out that at trial "Detective Matthew McDonald gave testimony to a wide range of amounts[:] 2.86, 28.6, and 24.49 grams...."[8] Martin appears to be asserting a *Booker* claim based on the failure of his sentencing counsel to object to a sentence of 84 months based on the court's finding that Martin was in possession of 24.29 grams of cocaine base. He argues that the jury found that he possessed greater than 5 grams of cocaine, which for sentencing purposes translated to possession of at most 5–20 grams of cocaine, a level 26 offense, while this court sentenced Martin based on a finding that he was in possession 20–25 grams of cocaine, a level 28 offense. Martin contends that this enhancement of his sentence violates the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[9]

The Third Circuit has held that a § 2255 petition under *Apprendi* and its progeny, *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),[10] are governed by the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir.2005). As in *Lloyd*, therefore, Martin's § 2255 petition is governed by the Third Circuit's Booker analysis.

Martin's conviction became final well before the Supreme Court issued *Booker* on January 12, 2005. The Third Circuit affirmed Martin's sentence on April 16, 2003, and ninety days from that date is July 15, 2003. Moreover, *Booker*, cannot be applied retroactively. *Lloyd*, 407 F.3d at 611–612. Thus, Martin cannot assert a *Booker* claim. *See also United States v. Chernyak*, No. 04–4243, 2005 WL 1971878, *1, 2005 U.S. Dist. LEXIS 16766, at *7 (E.D.Pa. Aug. 15, 2003) (following *Lloyd* to hold that "Defendant cannot claim that his plea was 'constitutionally invalid' based upon *Blakely* and *Booker*").

Even if *Booker* were to be applied retroactively, however, it was not necessary for counsel to object to the amount of drugs found in defendant's possession at the sentencing level. At trial, there was evidence that Martin possessed the amounts of either 2.86, 28.6, or 24.49 grams. The jury found that the amount of cocaine base possessed by the defendant was greater than 5 grams, thus eliminating 2.86 grams as a possible amount. Thus, the jury verdict reflected only the possibilities of 24.49 grams or 28.6 grams, a difference irrelevant for sentencing purposes, because a base offense level of 28 was applicable for any offense involving at least 20 but less than 35 grams of cocaine base.

Finally, the Third Circuit has affirmed the court's authority, following *Booker*, to determine the appropriate sentencing guidelines range under the preponderance-of-the evidence standard. In remanding a case for resentencing, where the original

---

8. Based on the introduction into evidence of conflicting lab reports, there was a dispute at trial as to the exact quantity of the drugs recovered from defendant's car. The jury found beyond a reasonable doubt that defendant was guilty of possession with intent to distribute over five grams of cocaine base.

9. In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, the Supreme Court held that, "any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

10. In *Blakely v. Washington*, The United States Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

sentence had been applied before *Booker* was decided, the Court stated:

> We ... note that the District Court·is free to engage in precisely the same exercise in judicial fact finding as it did in February 2003, so long as such fact finding is consistent with Booker. *Cf. United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir.2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

*United States v. Miller*, 417 F.3d 358, 362–63 (3d Cir.2005). Thus, the court was free to find by a preponderance of evidence for sentencing purposes that Martin was in possession of 24.49 grams of cocaine base.[11]

### C. Prosecutorial Misconduct.

Martin finally claims that the government committed prosecutorial misconduct asking him if the government's witnesses were lying. (Pet.5C). As discussed above, the courts are split on whether or not it is improper for the prosecutor to ask the accused if another witness is "lying." *See* infra, § II.B(4). Martin cites no precedent within the Third Circuit holding such questions are improper. Moreover, Martin presents no argument that he was prejudiced, as required by *Strickland*, by these questions.

### III. CONCLUSION

For the foregoing reasons, Martin's § 2255 motion requesting this Court to vacate, set aside or correct his sentence will be denied as to all grounds except Martin's claim that counsel provided ineffective assistance by failing to inform him of a plea offer made by the government. It is clear from the record that the prisoner is not entitled to any relief on those grounds. Martin will be provided an evidentiary hearing as to the merits of his claim that counsel failed to inform him of a plea offer made by the government.

An appropriate order will be entered.

### ORDER

**AND NOW**, this **5th** day of **October, 2006**, upon consideration of defendant's petition for relief pursuant to 28 U.S.C. § 2255 (doc. no.'s 91, 93), the government's response in opposition thereto (doc. no. 101), and defendant's reply (doc. no. 102), it is hereby **ORDERED** that defendant's motion is **GRANTED IN PART AND DENIED IN PART.** Defendant's motion is granted as to his claims that counsel provided ineffective assistance through counsel's prior representation of a government witness and by failing to inform defendant of a plea offer made by the government. Defendant's motion is denied as to all other claims.

It is **FURTHER ORDERED** that an evidentiary hearing shall be scheduled for **November 20, 2006** at **9:00 a.m.** in Courtroom 11A, United States Courthouse, 601 Market St., Philadelphia, Pennsylvania. The evidentiary hearing shall be limited in scope to the merits of petitioner's claims that counsel provided ineffective assistance through counsel's prior representation of a government witness and by failing to in-

---

**11.** Martin also appears to take issue with his trial counsel not objecting to 24.9 grams being the amount of drugs that Detective McDonald used to form the basis of his opinion that the drugs were held for resale. Again, if this were error on his counsel's part, Martin fails to show any prejudice. Detective McDonald testified that even if the amount of drugs were only 2.86 grams "due, again, to the totality of the situation, I think that two or three grams would be held for resale also."

form defendant of a plea offer made by the government.

It is **FURTHER ORDERED** that counsel shall be appointed to represent defendant in connection with the evidentiary hearing.

**AND IT IS SO ORDERED.**