ST. ALBANS FINANCIAL COMPANY, A Partnership, Plaintiff,

v.

C. Robert BLAIR, Stanley Kadash, Charles Convery, Colonial Village Meat Market, Inc., Colonial Village Meat Market Systems, Inc., Colonial Village Meat Market Leasing Corporation and Richard and Frances Amelio, Colonial Village Meat Market of 7101 Frankford Avenue, Inc. and Richard and Frances Amelio, John and Francine Leahy, Colonial Village Meat Market of Bryn Mawr, Inc. and Frank and Lois Canknopka, Trenton's Colonial Village Meat Market, Inc. and Vincent and Grace Basile, Colonial Village Meat Market of Dover, Inc., Defendants.

Civ. No. 82–3340.

United States District Court, E.D. Pennsylvania.

March 23, 1983.

Howard D. Scher, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

Joseph M. Donley, Fran-Linda Kobel, Kittredge, Kaufman & Donley, Philadelphia, Pa., for C. Robert Blair, Stanley Kadash, Charles Convery, Colonial Village Meat Market Inc., Colonial Village Meat Market Systems Inc., Colonial Village Meat Market Leasing Corp.

Vincent J. Pentima, William A. DeStefano, Oliver, DeStefano, Pentima & Partridge, Philadelphia, Pa., for Richard and Frances Amelio, Colonial Village Meat Market of 7101 Frankford Ave., Inc., John and Francine Leahy, Colonial Village Meat Market of Bryn Mawr, Inc., Frank and Lois Canknopka, Trenton's Colonial Village Meat Market, Inc., Vincent and Grace Basile, Colonial Village Meat Market of Dover, Inc.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Presently before the Court is a motion to disqualify Howard Scher, a member of the law firm Montgomery, McCracken, Walker & Rhoads ("MMW & R") as counsel for plaintiff, St. Albans Financial Corp. A motion to disqualify a party's chosen counsel is a most serious matter particularly where, as here, this motion arises in a complex matter with which the counsel has become very familiar. However, the court reluctantly determines that Mr. Scher must be disqualified from further representation of St. Albans in this litigation.

Prior to 1980, movants, Richard and Frances Amelio, Colonial Village Meat Mar-

ket of 7101 Frankford Avenue, Inc.; Richard and Frances Amelio, John and Francine Leahy, Colonial Village Meat Market of Bryn Mawr, Inc.; Frank and Lois Canknopka, Trenton's Colonial Village Meat Market, Inc.; and Vincent and Grace Basile, Colonial Village Meat Market of Dover, Inc., were franchisees of defendant Colonial Village Meat Market Systems, Inc. ("Systems") and had entered into several agreements with Systems and with the Colonial Village Meat Market Leasing Corporation ("Leasing").

On various dates in November and December, 1978, movants entered into "buyout" agreements with plaintiff, St. Albans, which previously owned the franchise for each of movants' stores. The buy-out agreements obligated movants to make weekly payments to St. Albans and restricted movants' ability to dispose of or transfer store assets. At the time movants entered into these buy-out agreements, St. Albans was comprised of six partners, Jack Yampolsky, Phillip Mattia, Henry Grothe, Morris Stackhouse, Robert C. Blair and Charles Convery. Robert Blair, one of the partners and a named defendant herein, was also the sole owner of Colonial Village Meat Market, Inc. ("Colonial") and its successor corporation, Systems. All six partners owned, operated or had ownership interests in various stores operating under the trade name, Colonial Village Meat Market.

In 1979, Howard Scher represented several Colonial Village franchisees, not including movants, in an anti-trust suit against Colonial and Systems in which the franchisees prevailed. *Louis C. and Phillip L. Bachetti, et al. v. Colonial Village Meat Market, et al.,* No. 75–2677 (E.D.Pa. Dec. 7, 1979). In December 1979, Scher was contacted by Jack Yampolsky to represent his interests and in that same month, an anti-trust suit was filed on behalf of three Colonial Village Stores in which Yampolsky had an interest. *Colonial Village Meat Market of Bala Cynwyd, Inc., et al. v. Colonial Village Meat Market Systems, Inc., et al.,* No. 79–4586 (E.D.Pa.). On December 30, 1979, Scher met with other franchisees to discuss their agreements with Systems, including the four movants, and in January

1980 a second anti-trust suit was filed on their behalf. *Maple Shade's Colonial Village Meat Market, Inc., et al. v. Colonial Village Meat Market Systems, Inc.,* No. 80–277 (E.D.Pa.).

Both lawsuits were settled shortly after they were instituted. As part of the settlement, in which Scher participated and counseled the movants, the franchise relationship between the franchisees, including movants, and Systems was severed. The buy-out agreements entered between the store operators and St. Albans, which were not at issue in the anti-trust suit, remained intact. MMW & R and six other firms involved in the litigation, were paid out of a common fund to which the store owners contributed on a weekly basis. As a further result of this lawsuit, as well as certain other litigation, the partners of St. Albans split and divided their interests.

For several months after the settlement, Scher continued to represent the movants and the other owners in an unsuccessful attempt to form a trade association. The bills for Mr. Scher's services in this matter were apparently paid by Mr. Yampolsky.

■ The instant litigation against movants arises out of the buy-out agreements with St. Albans. St. Albans alleges that movants acted in concert with Blair and his corporations to defraud St. Albans out of the money due it under its agreements in violation of the securities laws, the Racketeer Influenced and Corrupt Organizations Act, the Pennsylvania and New Jersey fraudulent conveyance laws, and the bulk transfer provisions of the Pennsylvania and New Jersey commercial codes.

Movants assert that because Scher formerly represented them, he must be disqualified from representing St. Albans against them in this proceeding under Canons 4 and 9 of the ABA Code of Professional Responsibility. Canon 4 requires that a lawyer preserve the confidences and secrets of a client, even after the termination of his employment. Canon 9 mandates that a lawyer avoid even the appearance of impropriety. Movants assert that Scher must

also be disqualified because it may be necessary for him to testify as a witness in the instant proceedings. *See* ABA Code, DR 5–102.

■ "An attorney is prohibited from accepting a subsequent representation where there 'may be the appearance of a possible violation of confidences' even though this may not be true in fact." *American Roller Co. v. Budinger,* 513 F.2d 982, 984 (3d Cir. 1975), quoting, ABA Committee on Professional Ethics, Informal Opinion No. 885 (1965). Disqualification is warranted where there is some chance, albeit a small one, that the lawyer was privy to confidences in his prior representation. *Akerly v. Red Barn System, Inc.,* 551 F.2d 539, 542 (3d Cir.1977).

> Courts have ... requir[ed] disqualification of counsel where it appears that the subject matter of a pending suit in which the attorney represents an interest adverse to a prior employer is such that during the course of the former representation the attorney might have acquired substantially related material.

*American Roller, supra,* at 984, quoting, *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382 (3d Cir.1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

The instant litigation in which Mr. Scher represents the plaintiff and the prior lawsuit in which Mr. Scher represented some of the defendants stem from a common source; the set of agreements creating and financing the franchise relationship between movants and the six partners in their various roles in their interrelated corporations. It is clear that the two lawsuits involve different aspects of the agreements; the prior lawsuit challenged movants' relationship with Systems on anti-trust grounds while the instant suit concerns the financial buy-out arrangement between movants and St. Albans. For the purposes of the Code of Professional Responsibility, these two matters are not separate and distinct.

In the prior representation, movants were counseled by Scher on severing their franchise relationship with Systems. In the course of that representation they may

have discussed the manner in which movants would continue their business operations following the severance, including compliance with the buy-out agreements with St. Albans. The buy-out agreements are specifically mentioned in an agreement entered into by the operators involved in the *Maple Shade* litigation. During his representation of movants, Scher may have learned facts concerning the relationship between movants, Blair and Systems relevant to the current allegations of improper dealing between these parties. Because of the interrelationship of parties, corporations and agreements, the subject matter of the pending lawsuit is substantially related to Scher's prior representation of movants and there is a chance that Scher was privy to confidences that relate to this suit. *Cf., American Roller, supra; Williamsburg Wax Museum v. Historic Figures,* 501 F.Supp. 326 (D.D.C.1980) (no substantial relation to prior representation).

Plaintiff argues that notwithstanding any substantial relationship, disqualification is inappropriate because the prior representation was a joint representation in which St. Albans was Scher's primary client, and movants had no expectation that any confidences disclosed to Scher would not be revealed to St. Albans. Some courts have refused to disqualify counsel jointly representing multiple parties where the former client seeking disqualification knew that any information would be revealed to the attorney's "primary client". *Allegaert v. Perot,* 565 F.2d 246 (2d Cir.1977); *Anderson v. Pryor,* 537 F.Supp. 890 (W.D.Mo.1982); *Wax Museum, supra; Levin v. Ripple Twist Mills,* 416 F.Supp. 876 (E.D.Pa.1976), appeal dismissed, 549 F.2d 795 (3d Cir.1977).

It is not clear to the court, however, that movants should have known that St. Albans was Mr. Scher's primary client, or even that they were jointly represented with St. Albans. Scher was retained initially to represent "Mr. Yampolsky's interests". Scher Affidavit ¶ 4. A lawsuit was filed on behalf of three Colonial Village Stores in which Yampolsky held an ownership interest. Although Yampolsky also held an in-

terest in the St. Albans partnership, St. Albans was not a named party to the legal proceedings at that time. The court cannot conclude that movants could reasonably have expected that information conveyed to Scher would be conveyed to Yampolsky in his capacity as store owner and later used against them in litigation with St. Albans.

Moreover, even if there were a prior joint representation, Scher must still be disqualified. Even if the attorney-client privilege would not apply between the joint clients, the ethical constraints of the Code of Professional Responsibility are much broader than the evidentiary privilege. The ethical duty not to reveal the confidences of a client, "unlike the evidentiary privilege, exists without regard to the nature or source of the information or the fact that others share the knowledge." ABA Code, E.C. 4–4. This ethical duty also encompasses more than protecting just the "confidences" and "secrets" of a client; the Code additionally requires that "a lawyer should not use *information* acquired in the course of a representation of a client to the disadvantage of the client..." ABA Code, E.C. 4–5 (emphasis supplied). "The use of the word 'information' in these ethical considerations as opposed to 'confidence' or 'secret' ... reveal[s] ... the drafters' intent to protect all knowledge acquired from a client...." *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir.1979). The court considers it a distinct possibility that in his prior representation of movants, Scher acquired information that could be used to their disadvantage in the current lawsuit which may be the reason for this motion.

In *Brennan's Restaurants,* an attorney represented a family business of two corporations in obtaining a trademark. When a dispute developed between two groups of family members, the corporations were divided between them and the attorney continued to represent one group. Litigation arose over the right to use the trademark and the attorney was disqualified from further representation.

The court held that under Canons 4 and 9, information acquired from a client is sheltered from use by the attorney against his client regardless of whether someone else was privy to it. The court stated that:

> The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter... The need to safeguard the attorney-client relationship is not diminished by the fact that the prior representation was joint with the attorney's present client. (citations omitted)

*Id.* 172. This reasoning also applies to the case at bar.

The court has carefully considered the interests of St. Albans in having Howard Scher, an able attorney, continue to represent them in this litigation. On balance, the possibility that information learned in the context of the attorney-client relationship will be used to movants' disadvantage, and the appearance of impropriety created by Scher's participation in a related lawsuit against his former clients, outweigh the interests of St. Albans in having Scher continue as their attorney and any tactical advantage movants may gain from Scher's disqualification. Therefore, whether or not Howard Scher may be called as a witness, the court concludes that he and his firm, MMW & R[1] must be disqualified from representing St. Albans in this litigation.

---

**1.** Generally when an attorney is disqualified his entire firm is similarly disqualified, *See,* DR 5–105(D), although in certain cases a screening device has been implemented to avoid the need to disqualify the entire firm. *INA Underwriters Insurance Co. v. Rubin,* No. 82–1989 (E.D.Pa. Feb. 10, 1983); *See also, U.S. v. Miller,* 624 F.2d 1198 (3d Cir.1980). Plaintiff has not requested that such a device be employed here and therefore a record was not created on this issue. Nor does the case seem appropriate for this device since plaintiff sought particularly to retain the services of Mr. Scher.