UNITED STATES

v.

**John P. MOSCONY, Thomas L. Cullen, Jr.**

**Crim. Nos. 88–258–01, 88–258–02.**

United States District Court, E.D. Pennsylvania, Criminal Division.

Oct. 21, 1988.

---

Alexander Silvert, Defender Ass'n of Philadelphia, Philadelphia, Pa., for witness Elizabeth Thiel.

Brian R. Williams, Philadelphia, Pa., for witness Patrizia Napolitano.

Larry A. Colston, Philadelphia, Pa., for witness Rosemary Siermine.

## MEMORANDUM AND ORDER

LOWELL A. REED, Jr., District Judge.

A federal grand jury has indicted the defendants in this case. The defendants are both presently represented by the law firm of Sprague Higgins & Creamer. The government and three of the government's witnesses, Elizabeth Thiel, Patrizia Napolitano and Rosemary Siermine, have moved to disqualify the Sprague firm from representing either of the defendants. In addition, the three witnesses have moved to prohibit the use of their statements obtained by the firm. I conclude, after a lengthy evidentiary hearing on the motion, careful consideration of the existing law and many hours of deliberation, that the Sprague firm must be disqualified and the witnesses' statements suppressed for the reasons that follow.

I

The government advances two grounds in support of its motion for disqualification. First, it asserts that the Sprague firm has an actual conflict of interest because the firm previously represented four of the government's witnesses during the grand jury investigation. Second, the government argues that the joint representation of the defendants by the Sprague firm will likely result in several conflicts of interest. Because I find that I must disqualify the Sprague firm due to its prior representation of the government's witnesses, I do not reach the government's second ground for disqualification.

A criminal defendant is entitled to a presumption in favor of his counsel of choice. *Wheat v. United States*, —— U.S. ——, 108 S.Ct. 1692, 1700, 100 L.Ed.2d 140 (1988). However, the presumption may be

Paul J. Van De Graaf, Jeanne K. Damirgian, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

J. Shane Creamer, Philadelphia, Pa., for defendants.

overcome by a showing of either an actual conflict or a serious potential for conflict. *Id.* Where the judgment of a defendant's attorney in handling a case is actually or is very likely to be tainted or limited by a conflict of interest, disqualification of the attorney may be an appropriate measure. *United States v. Flanagan,* 679 F.2d 1072, 1076 (3d Cir.1982), *rev. on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

Thus, I must determine whether there is an actual conflict, or a serious potential for conflict, involved in the representation of defendants by the Sprague firm. The government's first allegation of conflict stems from the Sprague firm's prior representation of several of the government's witnesses. The government contends, and defense counsel now concedes,[1] that the Sprague firm represented three of the government's witnesses, Elizabeth Thiel, Patrizia Napolitano and Rosemary Siermine, during the grand jury investigation of defendants.[2] The witnesses, who are former employees of defendant Moscony, allege that they divulged confidential information to the Sprague firm during the course of the representation on the precise matters on which they will be testifying and that questions posed on cross-examination might lead to the disclosure of privileged information to which they would invoke the attorney-client privilege.

Canon 4 of the Code of Professional Responsibility requires a lawyer to preserve the confidences and secrets of a client. Canon 5 requires a lawyer to exercise independent professional judgment on behalf of a client. A conflict arises between an attorney's duty not to reveal the confidences of a former client and his duty to vigorously represent his present client where confidences revealed by the former client during representation in the same or a substantially related matter would be useful to cross-examine that client when he testifies against the attorney's present client. *See e.g., United States v. Provenzano,* 620 F.2d 985, 1004–1005 (3d Cir. 1980). Defense counsel denies that any conflict of interest exists between his prior representation of the witnesses and its representation of the defendants. He attempts to distinguish those cases where a conflict was found due to an attorney's prior representation of a government witness arguing that in all such cases the attorney had acquired confidential and incriminating information in the course of the prior representation whereas in this case the prior representation was of an extremely limited nature and the firm did not receive any confidential information from the witnesses during the course of the representation.

The Third Circuit has held that once an attorney-client relationship has been established, an attorney's access to privileged information must be conclusively presumed. *United States v. Provenzano,* 620 F.2d at 1005. However, in view of the apparent limited nature of the prior representation in this case, I heard testimony and received evidence on the nature and circumstances of the representation of the witnesses to determine whether confidential information may have been revealed to defense counsel that would involve him in a conflict.

The testimony at the hearing confirmed that the representation of the witnesses by the Sprague firm was indeed limited. Mr. Creamer met once with the witnesses and several other employees of Moscony as a group in December, 1986 which meeting consisted of Mr. Creamer advising the employees that he would represent them with respect to the grand jury investigation and

---

1. Defense counsel conceded at the hearing on the disqualification motion held on September 9, 1988 that he represented the witnesses in question from December 1986 through approximately June, 30, 1987. See transcript of hearing (hereinafter T) at 77–78.

2. The government's motion also named a fourth witness, Rose Fortunato, as having been represented by defense counsel. However, the government did not introduce any evidence at the hearing on the motion with respect to Fortunato and Fortunato has not moved to join the disqualification motion as the other witnesses have. I therefore address the problem of conflict with respect to Thiel, Siermine and Napolitano only.

instructing them what to do if they were contacted by the FBI. Thereafter, Creamer accompanied Elizabeth Thiel to the FBI office when she was subpoenaed to provide a handwriting exemplar and fingerprints at which time he advised her to comply with the subpoena but not make any statements. On June 17, 1987, Patrizia Napolitano and Elizabeth Thiel met individually with Mr. Creamer. The subject of the meetings is discussed in detail below. Creamer's only other contact with any of the witnesses was a telephone conversation with Rosemary Siermine when Siermine was contacted by the FBI.

■ Each of the witnesses retained their own counsel some time in the fall of 1987. The Sprague firm did not represent any of the witnesses in connection with their subsequent discussions with the government or before the grand jury.

However, despite the rather limited representation of the witnesses by the Sprague firm, I conclude that confidential information was divulged by Elizabeth Thiel and Patrizia Napolitano in the course of such representation which would very likely be useful to cross-examine them. As I have already noted, Mr. Creamer met with Thiel and Napolitano individually on June 17, 1988. At each of the meetings Creamer asked the witnesses a series of questions and a member of the Sprague firm recorded their answers. Thereafter, Creamer prepared affidavits allegedly based on the information provided by the witnesses which the witnesses signed on July 2, 1988.

Mr. Creamer characterizes the subject matter of the meetings and the affidavits as mere statements of routine office procedures of Moscony Real Estate and argues therefore that they are not confidential communications between an attorney and his client. The government has not seen either the notes from the meeting between Creamer and the witnesses or the affidavits prepared by Creamer and signed by the witnesses. Mr. Creamer and counsel for the witnesses urged me at the hearing to review the notes and the affidavits *in camera.* Having done so, I cannot agree with Creamer's characterization of the statements as nonconfidential.

■ First, while it is true that many of the statements detail the office procedures at Moscony Real Estate, that does not render the statements nonconfidential where the office procedures of Moscony Real Estate are at the heart of the government's case against the defendants and where the statements were made in the context of a criminal investigation. Second, the statements do not only recite how the witnesses performed their duties but also detail what the witnesses were told or not told to do by the defendants. Moreover, many of the witnesses answers were made in response to leading questions phrased by defense counsel. It does not take much to imagine the usefulness of these statements to impeach the witnesses' testimony against the defendants. Indeed, if the statements were merely insignificant details of routine office procedures as Mr. Creamer characterizes them, I question why Mr. Creamer prepared the affidavits in the first place and refuses to agree not to use them. See T 215–216. Finally, it is undisputed that Creamer represented to the witnesses that he was their attorney and that the witnesses spoke with him in that capacity and with the idea that the information they gave him would not be divulged to the public.[3]

---

**3.** Defense counsel has argued repeatedly that the fact that the witnesses knew that defense counsel also represented defendant Moscony, that Moscony would probably know what they discussed with defense counsel and that Moscony saw the affidavits of the witnesses renders the witnesses' statements nonconfidential. After carefully considering this argument, I cannot agree.

Defense counsel relies on a line of civil cases from the Second Circuit which hold that an attorney is not required to disqualify himself from representing a party on the ground that he previously represented an adverse party where the attorney represented the two parties jointly and each was aware of the other's relationship to the attorney and had no reason to believe that confidences of one party would be withheld from the other. *See Kempner v. Oppenheimer & Co.,* 662 F.Supp. 1271 (S.D.N.Y.1987) and cases cited therein. Without passing on the wisdom of these decisions, I find them inapplicable to the present case in that they arise in the context of civil litigation between knowledgeable and

In view of my determination that the Sprague firm received confidential information from at least two of the government's witnesses in the course of its brief representation of them and that such information would be useful to cross-examine them, I conclude that the firm has an actual conflict of interest and that disqualification of the firm is the only acceptable remedy. I have thought long and hard about the alternative possibility of prohibiting defense counsel's use of the witnesses statements and limiting his cross-examination of the witnesses to avoid the conflict and the appearance of impropriety attendant therewith and allowing defendants the opportunity to waive their rights to cross-examination of the witnesses and the effective assistance of counsel. However, I have concluded that this alternative to disqualification is not appropriate for two reasons.

■ First, even if the defendants were willing to proffer a waiver of their important rights to cross-examination and the effective assistance of counsel (which they have not indicated they are willing to do), I could not accept their waiver. The government has represented that Elizabeth Thiel is the most important witness against the defendants due to her participation in virtually all of the real estate transactions which form the heart of the government's case. T–192. Indeed, according to the government, Thiel's testimony alone together with the government's documentary evidence would be enough to convict both of the defendants. T–192. Patrizia Napolitano will apparently corroborate much of what Thiel will testify to. T–193. Rose-

mary Siermine is also an important witness, according to the government, with respect to East Coast Investment which is another of defendant Moscony's businesses. T–194. All three of the witnesses have important information regarding the obstruction of justice charges. T–194.

In view of the centrality of the testimony of these witnesses to the government's case against the defendants, particularly that of Elizabeth Thiel, it is crucial that defense counsel be able to vigorously cross-examine these witnesses. The Sprague firm will be unable ethically to provide that cross-examination due to its prior representation of the witnesses. I cannot tolerate such an inadequate representation of the defendants. Nor must I in view of the holding of the Third Circuit in *United States v. Dolan:*

> [W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

sophisticated clients many of whom had the advise of outside counsel during the period of joint representation. The present case is not a civil suit brought by one joint client after a falling out with another but rather a criminal case brought by the government. Moreover, the witnesses are unsophisticated lay persons who were not advised by defense counsel or anyone else that information they divulged would not be confidential.

Instead, I find the reasoning of the Fifth Circuit in *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979) persuasive. In *Brennan,* the court disqualified the attorney for the defendants who had previously represented the plaintiffs and the defendants jointly. The court held that even if the attorney-client privilege

would not apply between the joint clients, the ethical contraints of the Code of Professional Responsibility are broader than the evidentiary privilege and prohibit an attorney from using any information acquired from a client in the course of representation regardless of whether someone else was privy to it. *Id. See also St. Albans Financial Co. v. Blair,* 559 F.Supp. 523, 526 (E.D.Pa.1983). Applying *Brennan* to this case, I find that ethical considerations proscribe the use by defense counsel of the statements of the witnesses regardless of the fact that Moscony was privy to them. Moreover, as I discuss in Section II of this opinion, I find that the witnesses' communications with defense counsel are subject to the attorney-client privilege as between the joint clients as well.

570 F.2d 1177, 1184 (3d Cir.1978). *See also, Wheat v. United States, supra; United States v. Calabria,* 614 F.Supp. 187, 193 (E.D.Pa.1985).

Fundamental fairness to the witnesses also requires me to reject the aforementioned alternative to the disqualification of counsel. It is important to note that it is not only the government that has moved for the disqualification of defense counsel but also the witnesses themselves. Even those circuits that differ from the Third Circuit in that they generally require a trial court to accept a defendant's knowing and voluntary waiver in the face of a conflict that arises from the prior representation by defense counsel of a government witness, distinguish between those cases where the government seeks disqualification and those where the witnesses themselves seek disqualification. *See, e.g., United States v. O'Malley,* 786 F.2d 786, 790 (7th Cir.1986); *United States v. James,* 708 F.2d 40, 45 (2d Cir.1983).[4] Where a motion for disqualification is made or joined in by the witnesses themselves those circuits hold that fundamental fairness requires that the witnesses' motion for the disqualification of counsel be granted despite the purported waiver of conflict-free representation by the defendant. *Id.*

Having found no appropriate alternative, I conclude that I must grant the motion of the government and its witnesses and disqualify the Sprague firm from representing either of the defendants. The case relied on by defense counsel in opposition to the government's motion does not convince me otherwise. In *United States v. FMC Corporation,* 495 F.Supp. 172 (E.D.Pa.1980) the government's witnesses who had been represented by counsel for the defendant before the grand jury testified at the disqualification hearing that they had not disclosed any confidential information in the course of the representation and that they would waive their attorney-client privilege. In the case presently before me, the witnesses have testified, and I have concluded, that they revealed confidential information to defense counsel which could be used against them during cross-examination at trial and the witnesses have stated that they will not waive their attorney-client privilege.

Accordingly, I will grant the motion of the government and the witnesses to disqualify defense counsel on the ground of defense counsel's prior representation of the witnesses. Although I do not reach the government's second argument with respect to the joint representation of the defendants at this time, I urge the defendants in selecting new counsel to represent them to carefully consider whether their interests would not be better served by separate counsel for each of them.

## II

I must now consider the request of the witnesses to prohibit the use at trial of their statements to Mr. Creamer.[5] This presents a somewhat different question than that presented by the motion for disqualification. While the Sprague firm has the ethical duty not to use the witnesses' statements against them because they were gained in the course of the firm's prior representation of them, defendants' new counsel will presumably not have the same problem. The use of the information by subsequent counsel turns instead on whether the witnesses can properly invoke the attorney-client evidentiary privilege with respect to it.

The attorney-client evidentiary privilege applies to confidential communications made by a client to an attorney for the purpose of obtaining or furthering legal assistance. *See,* McCormick, Evidence, § 95; 8 Wigmore, Evidence, §§ 2292, 2311. I have already held that the evidence introduced at. the hearing established that the witnesses statements' to Mr. Creamer were

---

4. In *United States v. Flanagan,* 679 F.2d at 1076 n. 5, the Third Circuit expressly rejected the approach of those circuits that appear to require district court acceptance of waivers in cases of potential or actual conflicts.

5. Although Mr. Creamer will no longer be representing the defendants, I must nonetheless resolve whether the witnesses' statements may be used at trial by subsequent counsel.

confidential communications made in the course of Creamer's representation of them. However, before I conclude that the attorney-client privilege applies to the witnesses' communications with Creamer, I must consider the effect of the joint representation of the witnesses and Moscony.

■ It can reasonably be inferred that communications made among several clients and their jointly retained counsel allied in a common legal cause are intended to be insulated from exposure beyond the confines of the group. *In the Matter of a Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381, 386 (S.D.N.Y.1975). Hence, such communications when made in the course of securing, advancing or supplying legal representation are shielded from disclosure by the attorney-client privilege except at the instance of any of the joint clients in any later controversy between or among those clients. *Id.* at 386, 393 and authorities cited therein. I find that the joint representation of Moscony and his employees during the grand jury investigation is at least analogous to those cases where the communications in question are made in the course of a joint legal cause and therefore conclude that the witnesses' statements are subject to the attorney-client privilege unless the aforementioned exception to the attorney-client privilege applies.

The exception to the attorney-client privilege for suits between former joint clients squarely applies when the former joint clients subsequently face one another as adverse parties in litigation brought by any one of them. *Id.* at 393. On the other hand, the exception has been held not to apply where the former joint client who seeks to invoke the attorney-client privilege is a witness in a proceeding brought by a third party as opposed to being one of the parties to the action. *Id.* at 394. In such a case:

> The witness under cross-examination … is in no sense a party to the proceeding, and is in no legal sense in controversy or litigation with the [former joint client]. Of course, in a broad sense, a controversy ha[s] arisen between the witness and

the [former joint client]. But the controversy or litigation [i]s between a third party and the [former joint client], and under such circumstances it would seem that the proposed testimony … would not fall within the exception to the general rule [that attorney-client communications are privileged].

*Id.* at 394 (quoting *State v. Archuleta*, 29 N.M. 25, 217 P. 619 (1923)).

■ In the present case, the former joint clients who seek to invoke the attorney-client privilege are not parties but witnesses in a case brought by a third-party, the government. Accordingly, I find that the exception to the general rule that attorney-client communications are privileged is not applicable and I therefore conclude that the witnesses are entitled to invoke the attorney-client privilege with respect to their communications with Mr. Creamer during his joint representation of them. I will grant the witnesses' motions to suppress the use of their statements by subsequent defense counsel.

An appropriate order follows.

### ORDER

AND NOW, to wit, this 21st day of October, 1988, upon consideration of the motion of the United States for the disqualification of counsel, the motions of Elizabeth Thiel, Patrizia Napolitano and Rosemary Siermine to join the motion of the United States for the disqualification of counsel and to prohibit the use of statements obtained by defense counsel, and the response of the defendants thereto, and upon consideration of the evidence received at the hearing held on September 9, 1988, it is hereby ORDERED that:

1. The motion of the United States and Elizabeth Thiel, Patrizia Napolitano and Rosemary Siermine for the disqualification of counsel is granted. The firm of Sprague, Higgins & Creamer is hereby disqualified from representing either of the defendants in this matter.

2. The motions of Elizabeth Thiel, Patrizia Napolitano and Rosemary Siermine to prohibit the use at trial of their statements

obtained by the firm of Sprague, Higgins & Creamer is granted. No communications between the movants and the firm of Sprague, Higgins & Creamer including, but not limited to, the notes of any meetings between the firm and the movants and the affidavits prepared by the firm and signed by the movants shall be communicated to substitute counsel nor be admissible or used for any purpose at trial unless the movants expressly waive their attorney-client privilege.

3. Defendants shall secure substitute counsel and have an appearance entered on the record within thirty (30) days of the date of this order. If defendants cannot afford counsel they shall so advise the court within thirty (30) days so that counsel may be appointed.